IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRANS-WESTERN PETROLEUM, INC., a Colorado corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>WOLVERINE GAS AND OIL CORPORATION, a Michigan corporation, UNITED STATES GYPSUM COMPANY, an Illinois corporation, DALE E. ARMSTRONG, an individual, CHEVRON U.S.A. INC., a Pennsylvania corporation, WINN EXPLORATION CO. INC., a Texas corporation, LARRY A BILLINGSLEY, an individual, BILLINGSLEY INTERESTS, LTD., a Texas limited partnership, et al.<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 2:06-CV-801 TS |

Before the Court is Plaintiff Trans-Western Petroleum, Inc.'s ("Trans-Western") Motion

for Partial Summary Judgment.[1] In its Motion, Trans-Western seeks an entry of summary

---

[1]Docket No. 106.

1

judgment on three of its claims asserted in its Second Amended Complaint against Defendant United States Gypsum ("USG"). Specifically, Trans-Western seeks: (1) a declaration that Trans-Western's lease with USG was valid as of August 17, 2004; (2) an entry of damages for USG's breach of contract in repudiating the lease; and (3) an entry of damages for USG's breach of the implied covenant of quiet possession.

A hearing on this matter was held on January 20, 2011. Having considered the parties' respective arguments, the Court enters the following ruling.

## I. FACTUAL AND PROCEDURAL HISTORY

As this Court has set forth previously, USG is the owner of the oil and gas (the "OG Interest") underlying 1,720 acres of land ("Subject Lands") located in Sevier County, Utah. A lease ("Armstrong Lease") covering the OG Interest was granted by USG to Dale E. Armstrong on August 17, 1995, for a term of five years. The Armstrong Lease contained a unitization paragraph ("Paragraph 9"). On September 25, 2001, Armstrong assigned the Armstrong Lease to Chevron. By assignment dated August 2, 2002, but effective May 25, 2000, Chevron assigned the Armstrong Lease to Wolverine. Chevron reserved an overriding royalty interest. In August 2001, USG and Wolverine extended the term of the lease to nine years with an end date of August 17, 2004. USG then leased the property to Trans-Western on August 17, 2004 for five years (the "Trans-Western Lease").

Trans-Western and Wolverine both claimed to have a valid lease to the Subject Lands. Trans-Western claimed that its lease with USG was valid because the Armstrong Lease expired

on August 17, 2004. Wolverine contended that the Armstrong Lease was properly extended by unitization, a concept defined under Paragraph 9 of the Armstrong Lease.

On December 3, 2007, this Court ruled that the Armstrong Lease expired by its express terms on August 17, 2004.[2] An appeal followed, and the Tenth Circuit affirmed this decision on November 18, 2009.[3]

Per this Court's Amended Order Granting Stipulated Joint Motion for Rule 54(b) Certification and Stay,[4] Trans-Western was granted leave to file its Second Amended Complaint, which was filed on March 26, 2010. In this Second Amended Complaint, Trans-Western alleges, among other things, a claim for declaratory relief against USG that (1) the Trans-Western Lease was valid as of August 17, 2004; (2) Trans-Western breached this lease by unlawful repudiation; and (3) Trans-Western breached the covenant of quiet possession inherent in this lease. It is on these claims that Trans-Western moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[5] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[2] Docket No. 53.

[3] *See* Docket No. 102.

[4] Docket No. 95, ¶ 16(c).

[5] *See* Fed.R.Civ.P. 56(a).

a verdict for the nonmoving party in the face of all the evidence presented.[6] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7] In opposing a motion for summary judgment, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."[8]

III. DISCUSSION

In USG's response to Trans-Western's Motion for Summary Judgment, USG does not dispute Trans-Western's statement of undisputed facts. Instead, USG provides additional details of the parties' negotiations and discussions concerning the Trans-Western Lease. From these additional details, USG argues that Trans-Western's Motion must be denied because the contract was rescinded by USG because of a mutual mistake of fact. In the alternative, USG argues that Trans-Western's Motion must be denied because of a unilateral mistake of fact by USG and further discovery is necessary under Fed.R.Civ.P. 56(d)[9] before this Court can rule on Trans-Western's Motion. Lastly, USG argues that summary judgment is inappropriate on the issue of damages because disputed issues of material fact preclude an entry of judgment as a matter of law.

---

[6]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[8]*Baccus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248).

[9]Formerly, Fed.R.Civ.P. 56(f).

A.     MUTUAL MISTAKE

USG argues that Trans-Western's Motion for Summary Judgment should be denied because the Trans-Western Lease was lawfully rescinded by USG based upon a mutual mistake of fact. As stated in the Restatement Second of Contracts,

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
> (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.[10]

USG argues that, at the time it entered into the Trans-Western Lease with Trans-Western, both parties believed that the Armstrong Lease had expired by its terms on August 17, 2004. USG further argues that,

> The parties' beliefs with respect to the expiration of the Armstrong Lease, that formed the basis of the [Trans-Western] Lease contract, however, were much more specific than that. The parties, in fact, believed that the Armstrong Lease was dormant. They were unaware of any activity that had been taken by Wolverine to extend the primary term of the Armstrong Lease, believed that no such activity had been taken, that Wolverine had shown no interest or expectation in further extending the primary term of the Lease, and that it was subject to expiration at the end of the extended primary term on August 17, 2004, on that basis. The parties were unaware of the existence of the Wolverine Unit, the inclusion of the Armstrong Lease within that Unit, and the production of unitized substances in paying quantities within the Unit area, thereby, arguably extending the primary term of the Armstrong Lease pursuant to ¶9 thereof, and entitling USG to royalties there from, which had a material effect on the agreed exchange of performances between the contracting parties.[11]

---

[10]RESTATEMENT (SECOND) OF CONTRACTS § 152.

[11]Docket No. 111, 23-25.

As Trans-Western correctly points out in reply, however, "'[a] mistake is a belief that is not in accord with the facts.'"[12] Trans-Western and USG's assumption that the Armstrong Lease expired by its express terms on August 17, 2004, was correct, and therefore in accord with the facts. Indeed, the only assumption by USG which was not in accord with the facts was its assumption that the Armstrong Lease was extended by Wolverine's activities, thereby giving USG the ability to rescind the Trans-Western Lease.

USG has not brought forth any case law to support the notion that the doctrine of mistake applies to a party's mistaken belief on its reason for rescission. Instead, the law is clear that relief under the doctrine of mutual mistake "is only appropriate in situations where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis for the contract."[13] Here, the parties' belief that the Armstrong Lease was dormant and would expire on August 17, 2004, was in accord with the facts at the time of contracting and therefore could not upset the very basis for the contract. Therefore, USG's rescission of the Trans-Western Lease is not excused under the doctrine of mutual mistake.

At oral argument, USG somewhat altered its position to argue that its mistake was believing that Wolverine would make no claim to the Subject Lands under the Armstrong Lease. USG argued, that had they known that Wolverine might make such a claim, USG would have never entered into the Trans-Western Lease. The defense of mistake, however, is limited to

---

[12]Docket No. 114, at 3 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 151).

[13]RESTATEMENT (SECOND) OF CONTRACTS § 152 cmt. a.

erroneous beliefs as they "relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as the word is defined here."[14] Although USG's failure to perceive Wolverine's future course of conduct constituted a lapse in judgment, this failure was not a "mistake" as contemplated by the defense of mistake.

The Court further notes that USG's claim that it had no knowledge of Wolverine's activities under the Armstrong Lease or of the existence of the Wolverine Unit is called into question by the fact that the Certification-Determination of the Bureau of Land Management, approving the Wolverine Unit Agreement, was recorded in the Sevier County Recorder's Office on August 13, 2003.[15] Additionally, based on Wolverine's recording of its Ratification and Joinder of Unit Agreement and Unit Operating Agreement for the Wolverine Unit Sanpete and Sevier Counties, Utah on August 14, 2003, USG also had notice that Wolverine committed the Armstrong Lease to the Wolverine Unit. As is well settled in Utah law, "[o]ne who deals with real property is charged with notice of what is shown by the records of the county recorder of the county in which the property is situated."[16] Thus, even if this Court were to agree that USG's failure to understand Wolverine's activities on the Subject Lands could constitute a mistake, the

---

[14]*Id.* at § 151(a).

[15]*See* Docket No. 30, Ex. 5.

[16]*Crompton v. Jenson*, 1 P.2d 242, 247 (Utah 1931); *see also* Utah Code Ann. § 17-21-11(1) ("Each certified copy from the time of recording gives notice to all persons of the contents of the recorded document"); *Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 837 (Utah 1998) (document filed with the county recorder "impart notice to all persons of their contents").

7

record shows that USG had knowledge of these activities and therefore cannot now claim the defense of mistake.

B.  UNILATERAL MISTAKE

USG further argues, in the alternative, that if Trans-Western was aware of Wolverine's Activities on the Subject Lands, Trans-Western had a duty to inform USG of these activities and rectify USG's mistaken assumption that the Armstrong Lease would expire on August 17, 2004. In making this argument, USG argues that it is presently unable to present facts essential to its opposition and therefore requests that the Court deny the Motion or order a continuance to enable discovery to be conducted under Fed.R.Civ.P. 65(d).

The Court finds that USG's request for additional discovery should be denied. As discussed above, USG's allegedly false assumption was actually in accordance with the facts at the time of contracting and, therefore, not a mistake. Moreover, as a matter of law, USG had knowledge of Wolverine's activities on the Subject Lands because Wolverine recorded its claims on the county records. Therefore, USG's defense fails as a matter of law and additional discovery is not necessary.

C.  CONSIDERATION

At oral argument, USG argued for the first time that the Trans-Western Lease is unenforceable for lack of consideration. A basic tenant of the law of contracts is that a contract must be supported by consideration for it to enforceable.[17] "Consideration is present when there is an act or promise given in exchange for the other party's promise. Thus, there is

---

[17] *See Aquagen Int'l, Inc. v. Calrae Trust*, 972 P.2d 411, 413 (Utah 1998).

consideration whenever a promisor receives a benefit or where a promisee suffers a detriment, however, slight."[18]

USG argues that because Trans-Western never paid on the draft tendered to USG as a "down cash payment" pursuant to Paragraph 2 of the Lease, Trans-Western never incurred a detriment and thus no consideration was given. However, as Trans-Western noted at oral argument and in its written memoranda, Trans-Western tendered a Key Bank draft payable to the order of USG in the amount of $32,680.00. USG had the ability to negotiate the draft from the moment of delivery. Thus, USG cannot now claim a want of consideration after Trans-Western obligated itself to pay on a negotiable draft in the possession of USG.

Moreover, the Court notes that Trans-Western's promise to pay royalties to USG under the Trans-Western Lease is valid consideration.[19] Thus, even if the Court were to agree that Trans-Western suffered no detriment because USG never negotiated the draft, the Lease itself contains valid consideration to render the Lease enforceable.

D.  BREACH OF CONTRACT AND THE COVENANT OF QUIET POSSESSION UNDER THE LEASE.

Because the Court rejects USG's defenses and USG has not disputed any of the facts alleged by Trans-Western, the Court will enter judgment in favor of Trans-Western that (1) the

---

[18]*Healthcare Serv. Group v. Utah Dep't of Health*, 40 P.3d 591, 596 (Utah 2002) (internal quotation marks and citations omitted).

[19]*See* WILLIAM & MEYERS, LAW OF OIL AND GAS, § 202.1 ("The consideration for the authorization given the lessee is most frequently an agreement by the lessee to deliver to the lessor a share of the product of the land, or the proceeds thereof, free of cost, described as a royalty.").

Trans-Western Lease was valid from the date of its execution, August 17, 2004; (2) that USG breached the Lease by unlawfully rescinding the Lease; and (3) that USG breached the Covenant of Quiet Possession[20] under the Lease by rescinding the Lease and refusing Trans-Western's efforts to occupy the Subject Lands.

E.  DAMAGES

Trans-Western seeks its attorney's fees in litigating its claims against USG and Wolverine as consequential damages of USG's breach. Utah law "allows recovery of attorney fees as consequential damages, but only in the limited situation where the defendant's wrongful conduct foreseeably causes the plaintiff to incur attorney fees through litigation with a third party."[21] To prevail under the third-party litigation exception, however, USG must demonstrate that its prior litigation efforts in this case were "a natural consequence of [Trans-Western's] breach and that it was necessary to bring the action."[22] The Court finds that deciding this issue would require this Court to make factual determinations which are inappropriate for summary judgment.[23] Therefore, the Court will deny Trans-Western's request for attorney's fees as

---

[20]"A covenant of quiet possession is implied in every lease of real property, absent a specific lease provision to the contrary. This covenant obligates the landlord to refrain from disturbing the lessee's possession in any way, such as by forcible eviction, issuance of a conflicting lease, or any other action that would interfere with the possession of the lessee for the purposes of the lease." THOMAS & BACKMAN, UTAH REAL PROPERTY LAW, §5.05(b).

[21]*Macris & Assoc. v. Neways, Inc.*, 60 P.3d 1176, 1179 (Utah Ct. App. 2002).

[22]*Id.* at 1181.

[23]*See id.* (noting that resolving whether the third-party litigation exception applies is "a question of fact inappropriate for summary judgment").

damages at this time and will allow Trans-Western to argue the issue at later proceedings before the appropriate fact-finder.

IV. CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Trans-Western's Motion for Summary Judgment (Docket No. 106) is GRANTED IN PART and DENIED IN PART. The Court grants Trans-Western's Motion on its claims for declaratory relief, breach of contract, and quiet possession, but denies its request for an entry of damages at this juncture. Disputed material facts remain which preclude this Court from entering damages in this matter and the determination of damages will therefore be reserved for later proceedings.

DATED January 24, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge