**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **TRANS-WESTERN PETROLEUM, INC.,** a Colorado corporation, | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| v. | **Case No. 2:06-cv-801-TS-PMW** |
| **WOLVERINE GAS AND OIL CORPORATION, a Michigan corporation, et al.,** | |
| | **Chief District Judge Ted Stewart** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

Chief District Judge Ted Stewart referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court is Trans-Western Petroleum, Inc. ("Trans-Western") and Brynne Shanner's ("Shanner") (collectively, "Movants") motion to quash a subpoena issued to Shanner ("Subpoena").[2]  The court has carefully reviewed the written memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda.  *See* DUCivR 7-1(f).

---

[1]  *See* docket nos. 2, 3.

[2]  *See* docket no. 127.

## RELEVANT BACKGROUND

Trans-Western, through a related entity, is a party to a joint venture that was formed for the purpose of obtaining an oil and gas lease ("Joint Venture").  Also through an entity, Shanner is a party to the Joint Venture.  During litigation, Trans-Western's principal, Doug Isern, forwarded certain e-mails ("Documents") to the partners in the Joint Venture, including Shanner. The overwhelming majority of the Documents were either sent to or sent by Movants' counsel.

In September 2011, United States Gypsum Company ("Defendant") issued the Subpoena to Shanner to produce, among other things, the Documents and to appear for a deposition. Movants objected to the Subpoena.  After the parties met and conferred in an attempt to resolve the dispute over the Subpoena, Movants filed the motion to quash now before the court.

## ANALYSIS

In their motion, Movants seek to quash the Subpoena to the extent it seeks the Documents, which Movants claim are protected from disclosure by the attorney-client privilege and the work-product doctrine.  Movants have also submitted the Documents for an *in camera* review.  Movants admit that the Documents were disclosed to Shanner.  However, relying on the common-interest doctrine, Movants argue that said disclosure did not waive protection of the Documents under either the attorney-client privilege or the work-product doctrine.

Pursuant to rule 45(c)(3)(A)(iii) of the Federal Rules of Civil Procedure, "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(c)(3)(A)(iii).  The Tenth Circuit "reviews the district court's rulings on attorney-client

privilege and work-product protection for abuse of discretion." *United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008).

In response to Movants' motion, Defendant argues that (1) the motion is premature and untimely; (2) Movants' objection letter and privilege log do not comply with rule 45(d)(2)(A); (3) the Documents are not subject to the attorney-client privilege or the work-product doctrine; and (4) even if the Documents are subject to the attorney-client privilege or the work-product doctrine, the common-interest doctrine does not apply and, consequently, Trans-Western's disclosure of the Documents to Shanner and the other partners of the Joint Venture operates as a waiver of those protections.  The court will address Defendant's arguments in turn.

## I.  Premature and Untimely

Defendant argues that Movants' motion is premature and untimely.  The court concludes that both of those arguments fail.  While Defendant makes the general argument that Trans-Western has failed to comply with its overall discovery obligations, Defendant has failed to establish that the instant motion is premature.  To the contrary, the parties' correspondence demonstrates to the court that the parties reached an impasse, after complying with the obligatory meet-and-confer requirement, on the issue of whether the Documents are protected by the attorney-client privilege or the work-product doctrine.  As such, the court cannot say that Movants' motion is premature.

The court likewise cannot say that Movants' motion is untimely.  Although it is not entirely clear from the parties' written submissions, it appears that Defendant takes issue only with Movants' decision to send their objections to the Subpoena by regular mail, rather than by

3

hand delivery or e-mail.  In short, based on the information provided by the parties, it does not

appear that Movants failed to object within the time frame required by rule 45(c)(2)(B).  *See* Fed.

R. Civ. P. 45(c)(2)(B).

## II.  Objection Letter and Privilege Log

Defendant contends that Movants' objection letter and privilege log fail to comply with

the requirements of rule 45(d)(2)(A).  Pursuant to rule 45(d)(2)(A),

> A person withholding subpoenaed information under a claim that it
> is privileged or subject to protection as trial-preparation material
> must:
>> (i) expressly make the claim; and
>> (ii) describe the nature of the withheld documents,
>> communications, or tangible things in a manner that,
>> without revealing information itself privileged or protected,
>> will enable the parties to assess the claim.

Fed. R. Civ. P. 45(d)(2)(A)(i)-(ii).

The court is not persuaded by Defendant's arguments.  The letter that Movants' counsel

sent to Defendant's counsel clearly states that Movants were objecting to the Subpoena because it

sought material that was protected by the attorney-client privilege and work-product doctrine.

Subsequently, Movants sent Defendant a privilege log that, in the court's view, provides

sufficient information to comply with the requirements of rule 45(d)(2)(A).  Furthermore, after

conducting an *in camera* review of the Documents, the court has determined that the information

provided on the privilege log accurately describes the Documents.

4

### III.  Applicability of Attorney-Client Privilege and Work-Product Doctrine

Defendant asserts that the Documents are not protected by the attorney-client privilege or

the work-product doctrine.

> The attorney-client privilege is the oldest of the privileges
> for confidential communications known to the common law.  Its
> purpose is to encourage full and frank communication between
> attorneys and their clients and thereby promote broader public
> interests in the observance of law and administration of justice.

*Ary*, 518 F.3d at 782 (quotations and citations omitted).

> The attorney-client privilege protects confidential
> communications by a client to an attorney made in order to obtain
> legal assistance from the attorney in his capacity as a legal advisor.
> [T]he mere fact that an attorney was involved in a communication
> does not automatically render the communication subject to the
> attorney-client privilege, rather, the communication between a
> lawyer and client must relate to legal advice or strategy sought by
> the client.
>
> Although this description of the attorney-client privilege
> suggests the privilege only applies one way, operating to protect
> the client's communications to a lawyer, it is generally also
> recognized that the privilege will protect at least those attorney to
> client communications which would have a tendency to reveal the
> confidences of the client.

*In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quotations and citations

omitted) (alteration in original).

> Because confidentiality is critical to the privilege, it will be
> lost if the client discloses the substance of an otherwise privileged
> communication to a third party.  The confidentiality of
> communications covered by the privilege must be jealously
> guarded by the holder of the privilege lest it be waived.  Where
> disclosure to a third party is voluntary, the privilege is waived.

*Ary*, 518 F.3d at 782 (quotations and citations omitted).  The party asserting the attorney-client

privilege bears the burden of establishing its applicability.  *See In re Grand Jury Proceedings*,

616 F.3d at 1183.

> The work-product doctrine . . . shelters the mental
> processes of the attorney, providing a privileged area within which
> he can analyze and prepare his client's case.  In performing his
> various duties . . . it is essential that a lawyer work with a certain
> degree of privacy, free from unnecessary intrusion by opposing
> parties and their counsel.
>
> Work-product protection extends to the production of
> material assembled by an attorney in preparation for impending
> litigation. . . . The protection of work-product, however, is not
> absolute and may be waived. . . . Courts will imply waiver when a
> party claiming the protection has voluntarily disclosed work
> product to a party not covered by the work-product doctrine.

*Ary*, 518 F.3d at 782-83 (quotations, citations, and footnote omitted) (second alteration in

original); *see* Fed. R. Civ. P. 26(b)(3) (codifying work-product doctrine).  The party asserting the

work-product doctrine bears the burden of establishing its applicability.  *See In re Grand Jury*

*Proceedings*, 616 F.3d at 1185.

The court concludes that Defendant's arguments concerning the applicability of the

attorney-client privilege and the work-product doctrine are without merit.  After conducting an *in*

*camera* review of the Documents, the court has determined that they all relate to legal advice and

strategy, reveal Movants' confidences, or were prepared in anticipation of litigation.  *See* Fed. R.

Civ. P. 26(b)(3); *In re Grand Jury Proceedings*, 616 F.3d at 1183-85; *Ary*, 518 F.3d at 782-83.

Accordingly, the court concludes that the Documents are indeed protected by either the

attorney-client privilege or the work-product doctrine.

## IV. Common-Interest Doctrine

Finally, Defendant argues that even if the Documents are subject to the attorney-client privilege or the work-product doctrine, the common-interest doctrine does not apply and, consequently, Trans-Western's disclosure of the Documents to Shanner and the other partners of the Joint Venture operates as a waiver of those protections.

The Tenth Circuit has recognized the common-interest doctrine, which "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Frontier Ref. Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998); *see also In re Qwest Commc'ns Int'l*, 450 F.3d 1179, 1195 (10th Cir. 2006) (providing that the common-interest doctrine "provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case").  This court has also recognized the common-interest doctrine and applied it to both the attorney-client privilege and the work-product doctrine.  *See Phillip M. Adams & Assocs., L.L.C. v. Winbond*, No. 1:05-cv-64-TS, 2010 U.S. Dist. LEXIS 76271, at *21-23 (D. Utah July 26, 2010) (recognizing common-interest doctrine and finding "that the documents are, as claimed, work product, attorney-client and/or joint prosecution for which the common interest doctrine should apply"); *P.J. v. Utah*, No. 2:05-cv-739, 247 F.R.D. 664, 675 (D. Utah Nov. 27, 2007) ("Attorney work product may be disclosed to persons who share a common interest without waiving the privilege.").  The common-interest doctrine is applicable to joint ventures.  *See, e.g.*, *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-816 (7th Cir. 2007) ("[T]he common interest

7

doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise. . . . Reason and experience demonstrate that joint venturers, no less than individuals, benefit from planning their activities based on sound legal advice predicated upon open communication.").

As noted above, Trans-Western and Shanner (through respective entities) are both parties to the Joint Venture. Further, Trans-Western and Shanner are represented by the same legal counsel in relation to this case. Finally, as noted by Movants, Shanner has a direct and coterminous financial interest with Trans-Western in the Joint Venture. For these reasons, the court concludes that Trans-Western and Shanner share a common legal interest with respect to this case and the Documents. Accordingly, the court concludes that the common-interest doctrine does apply here and, as a result, Trans-Western's disclosure of the Documents to Shanner and the other partners of the Joint Venture did not operate as a waiver of either the attorney-client privilege or the work-product doctrine. *See, e.g., id*. at 816 (stating that "the scope of the common interest doctrine is limited to a common *legal* interest to which the parties formed a common strategy" and affirming the trial court's conclusion that the common-interest doctrine applied to a joint venture).

## CONCLUSION AND ORDER

The court has determined that all of Defendant's arguments fail and that Movants have met their burden of demonstrating the applicability of the attorney-client privilege and the work-product doctrine. Accordingly, the court concludes that the Documents are protected by

8

either the attorney-client privilege or the work-product doctrine.  Movants' motion to quash the

Subpoena[3] is **GRANTED**.

**IT IS SO ORDERED**.

DATED this 15th day of December, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[3] *See* docket no. 127.